**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| TWILA H.[1], | : | | |
| *Plaintiff,* | : | | CIVIL ACTION |
| v. | : | | No. 24-586 |
| | : | | |
| COMMISSIONER OF | : | | |
| SOCIAL SECURITY, | : | | |
| *Defendant.* | : | | |

<u>**MEMORANDUM**</u>

JOSÉ RAÚL ARTEAGA                                             March 19, 2025
United States Magistrate Judge[2]

    The Commissioner of the Social Security Administration, through an Administrative Law Judge ("ALJ"), denied, in part, Twila H.'s application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383[3], finding she was not disabled from December 17, 2014, through January 17, 2021. (Tr. 21-22.) Twila H., who is self-represented, seeks judicial review of the final

---

[1] Twila H. is referred to solely by her first name and last initial in accordance with this Court's standing order addressing party identification in social security cases. *See* Standing Order, In re: Party Identification in Social Security Cases (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited Mar. 4, 2025).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (ECF 9.)

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

administrative decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) and asks the Court to reverse and remand the Commissioner's decision.

After careful review of the record, Twila H.'s request for review is DENIED, and the Commissioner's decision is AFFIRMED.

## I.    BACKGROUND

Twila H. filed her application for SSI on December 17, 2014, alleging an August 28, 2014 disability onset date,[4] based on pain in her right shoulder and right wrist, right arm pain, back pain, and difficulty breathing.  (Tr. 236-37, 676.)  Initially, her claim was denied, and she timely requested a hearing.  (Tr. 292-95, 296-98.)  ALJ Jonathan L. Wesner held one on November 7, 2017.[5]  (Tr. 195-227.)  On March 13, 2018, he found Twila H. not disabled under the Social Security Act. (Tr. 242-54.) She requested Appeals Council review of ALJ Wesner's decision, and in January 2020, the Appeals Council remanded the matter for further evaluation of Twila H.'s residual functional capacity ("RFC") and symptoms.  (Tr. 255-58, 369-70.)

---

[4] Although supplemental security income is not payable prior to the month following the month in which the application was filed, 20 C.F.R. § 416.335, the ALJ considered Twila H.'s "complete medical history" in evaluating her claims. *See* 20 C.F.R. § 416.912(d).

[5] ALJ Wesner also held a hearing on July 11, 2017, but it was postponed because Twila H.'s attorney at the time, Michael J. Graves, Jr., Esquire failed to appear. (Tr. 228-34.)  Graves also failed to appear at the November hearing and allegedly directed Twila H. not to appear as well.  (Tr. 197-99.)  Twila H. subsequently discharged Mr. Graves as her counsel.  (Tr. 371.)

ALJ Regina L. Warren held a telephonic hearing on November 24, 2020 due to the COVID-19 pandemic.[6]  (Tr. 138-65, 486-90.)  On December 31, 2020, she found Twila H. not disabled. (Tr. 263-76.) Twila H. sought review of her decision from the Appeals Council, which remanded the matter on September 7, 2021. (Tr. 283-89.) The Appeals Council directed ALJ Warren to: (1) clarify whether Twila H. was disabled from December 17, 2014, the date she filed her application for SSI; (2) give further consideration to Twila H.'s maximum RFC during the entire relevant period and provide "specific references" to evidence supporting assessed limitations; and (3) reconsider application of

---

[6] ALJ Warren also held a hearing on May 19, 2020, but it was continued for the Social Security Administration to obtain updated records. (Tr. 188.) The hearing was rescheduled for August 18, 2020 but postponed again because Twila H. did not want to proceed without counsel.  (Tr. 170.)  In August 2020, Twila H. obtained new counsel, Allan Meltzer, Esquire, who represented her at the November 2020 hearing.  (Tr. 141-42, 451-59.)

Twila H. does not argue she was denied the right to counsel in her administrative proceedings.  Social Security claimants have a statutory and regulatory right to counsel at administrative hearings.  *Phifer ex rel. Phifer v. Comm'r of Soc. Sec.*, 84 F. App'x 189, 190 (3d Cir. 2003).  Such claimants must be given notice of the right to counsel and may waive this right only by a knowing and intelligent waiver. *Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 157 (3d Cir. 2008) (citation omitted).  Claimants are also permitted to "appoint any person who is not an attorney to be your representative in dealings with [the Social Security Administration]."  20 C.F.R. § 416.1505(b).

ALJ Warren discussed the right to counsel with Twila H. at the August 2020 hearing and granted her a postponement to obtain counsel.  (*See* Tr. 168-71.)  Twila H. subsequently engaged Mr. Meltzer, and he represented her at the November 2020 hearing. After he withdrew, she elected to appoint Kelly Dutton as a non-attorney representative.  (*See* Tr. 564-65.)  A claimant like Twila H. who previously obtained and dismissed counsel necessarily knows about her right to counsel (absent other circumstances such as mental limitations).  (*See* Tr. 371.)  Under these facts, Twila H. made a knowing and intelligent waiver of her right to counsel at the hearings. Regardless, Twila H. does not argue that ALJ Warren erred in finding Dutton to be a "qualified representative." (Tr. 46, 98.)

the sequential evaluation process in conjunction with Twila H.'s age under 20 C.F.R. § 416.963's borderline age provisions and obtain supplemental evidence from a vocational expert regarding transferable skills.[7]  (Tr. 21, 286.)

ALJ Warren held another telephonic hearing on January 13, 2022. (Tr. 95-129.) Twila H. testified, as did the Agency's vocational expert ("VE") Ellen Levin.  (*Id.*)  Kelly Dutton, a qualified non-attorney representative, represented Twila H. at the hearing.  (Tr. 98.)  After the hearing, the ALJ ordered an independent orthopedic consultative examination of Twila H. and held the record open for submission of additional medical records.  (Tr. 128.)  Twila H. underwent a consultative examination on April 18, 2022, and her representative submitted objections to the report.  (Tr. 1608-35, 800-01.)  ALJ Warren held a supplemental hearing on September 8, 2022 to consider the consultative examination report and Twila H.'s objections, along with late-submitted medical records, and to obtain additional VE testimony. (Tr. 43-94.)  Twila H. testified, along with VE Martin Kranitz.  (Tr. 21.)  Non-attorney representative Dutton represented Twila H. again at the telephonic supplemental hearing.  (Tr. 45-46, 575.)

On September 21, 2022, ALJ Warren found Twila H. disabled since January 18, 2021, but not between December 17, 2014—the alleged onset date—and January 17, 2021: a partially favorable determination.  (Tr. 21-34.)  More specifically, the ALJ determined that, from August 28, 2014, through January 17, 2021, Twila H. had the RFC to perform

---

[7] The Appeals Council noted that, at the time, Twila H. was less than six months from reaching the "closely approaching advanced age" category, which, if it applied, could result in a finding of disability depending on whether Twila H. acquired skills in her past work that were transferable to other occupations. (Tr. 285-86.)

"light work . . . except she could stand/walk for [four] hours in an [eight]-hour workday, and sit for [six]." (Tr. 27.) She further determined that, from January 18, 2021, through the date of her decision, Twila H. had the RFC to perform "sedentary work." (*Id.*) The ALJ included the same postural, manipulative, and environmental limitations for both RFCs.[8] (Tr. 27.) She found that, from August 28, 2014, through January 17, 2021, Twila H.'s RFC did not preclude her past relevant work as a cashier, and alternatively, that other jobs "existed in the national economy" that she could have performed. (Tr. 32-33.) The VE testified that Twila H. would have also been able to perform "representative occupations such as mail clerk, non-postal/small business[,] . . . packer[,] . . . and sorter . . . [,]" even with only one hand. (*Id.*; *see also* Tr. 85.)

Based on a review of all record evidence and the VE's testimony, the ALJ concluded that Twila H. was not disabled from August 28, 2014 to January 17, 2021 because there were jobs that existed in significant numbers in the national economy that she could have performed.[9] (Tr. 32.) However, beginning on January 18, 2021, "there were

---

[8] The ALJ limited Twila H. to "frequently" pushing or pulling with the left upper extremity and "occasionally" pushing or pulling with the right upper extremity. (Tr. 27.) She "could occasionally stoop, climb stairs, balance, kneel, crouch, or crawl" but never climb ladders. (*Id.*) She could "frequently operate" foot controls with the bilateral lower extremities and could use the upper right extremity to "occasionally reach overhead." (*Id.*) She could "frequently grasp, or perform fine fingering[,]" and had no limitations with overhead reaching on the left. (*Id.*) She was required to avoid "cold, humidity, dust, fumes, gases, poor ventilation, vibration, unprotected heights, and hazards." (*Id.*)

[9] The ninth heading in the ALJ's opinion states that, from August 28, 2014 through January 17, 2021, "there were *no* jobs that existed in significant numbers in the national economy" that Twila H. could have performed. (Tr. 33 (emphasis added).) However, the "no" in the heading appears to have been included in error. It is clear from other statements in the opinion, and the opinion as a whole, that the ALJ found Twila H. to be

no jobs that existe[ed] in significant numbers in the national economy" that Twila H. could have performed, and thus a finding of "disabled" from that date forward was directed by Medical-Vocational Rule 201.12.[10]  (Tr. 34.)

Twila H. asked the Appeals Council to review this decision but on November 3, 2023, the Appeals Council denied her request.  (Tr. 8-12.)  ALJ Warren's September 21, 2022 decision then became the Commissioner's final act.  (Tr. 21-34.)  On appeal here, Twila H. argues the ALJ committed reversible error by: (1) failing to find her disabled at step three; (2) improperly weighing medical opinion evidence in determining her RFC; and (3) failing to resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT").  *See* (ECF 15 at 2-5.)  Twila H. also alleges the ALJ was biased against her and "use[d] her discretion to favor social security." (ECF 15 at 5, ECF 21 at 5.)

---

capable of performing past relevant work and that other jobs *did* exist in the national economy that Twila H. was able to perform.  *See, e.g.,* (Tr. 32 ("[T]he claimant was able to perform past relevant work as a cashier (20 C.F.R. § 416.965)."); Tr. 33 (An "individual [with the claimant's RFC] would have also been able to perform the requirements of representative occupations . . .")); *see also Beeks v. Comm'r of Soc. Sec.,* 363 F. App'x 895, 897 n.4 (3d Cir. 2010) (agreeing that the word "not" in a heading of the ALJ's opinion was a typographical error in light of the ALJ's other analysis).

[10] Rule 201.12 provides that a finding of disability is warranted where a claimant is limited to a range of no more than sedentary work; is over the age of 50; has an education which is high school or more but "does not provide for direct entry to skilled work," and the individual has past relevant work which was unskilled or has no past relevant work. 20 C.F.R. § Pt. 404, Subpt. P, App'x 2, Rule 201.12.

## II.    LEGAL STANDARDS

Working through ALJs, the Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 416.920(a).  The Commissioner determines whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment;[11] (3) has impairment(s) that meet or medically equal a listed impairment;[12] (4) has the capacity to do past relevant work, considering her RFC;[13] and (5) is able to do any other work, considering her RFC, age, education, and work experience.  *Id.*

The burden of proof is on the claimant at all steps except step five.  *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  At step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]."  *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

---

[11] A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c).

[12] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[13] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (*e.g.*, pain). 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe.  *Id.* § 416.945(a)(2).

The Social Security Act requires an ALJ to state the "reason or reasons upon which [a denial of benefits] is based."  42 U.S.C. § 405(b)(1).  An ALJ "may consider many factors" when determining the reason or reasons for their decision, "yet base a decision on just one or two" factors.  *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).  ALJs must "explain only the dispositive reasons for their decisions, not everything else that they considered."  *Id.*  Said otherwise, ALJs "must always explain the reasons for their decisions. But that does not mean always explaining all the factors."  *Id.*  The ALJ's opinion need only include "sufficient development of the record and explanation of findings to permit meaningful judicial review."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citation omitted). The Court reads the ALJ's decision "as a whole" to determine whether the record was sufficiently developed.  *Id.*

Any legal issues the ALJ decides are subject to the Court's "plenary review." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).  This Court's review of the Commissioner's final decision is limited to the question of whether the ALJ's findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Johnson*, 529 F.3d at 200.  "[T]he threshold for such evidentiary sufficiency is not high . . . ."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted). It is "more than a mere scintilla but may be somewhat less than a preponderance of evidence."  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). A "single piece of evidence will not satisfy the substantiality test if the [Commissioner]

ignores, or fails to resolve, a conflict created by countervailing evidence." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Where substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Courts defer to the ALJ's assessment of the evidence, which will not be undermined by contrary evidence so long as the ALJ "explain[s] what evidence he [or she] found not credible and why." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citation omitted). In other words, reviewing courts must affirm the Commissioner if substantial evidence supports his decision, even if they would have decided the case differently. *See Fargnoli*, 247 F.3d at 38. The Court cannot substitute its own judgment for that of the factfinder. *Zirnsak*, 777 F.3d at 611 (citation omitted). Therefore, the question before this Court is not whether Twila H. is disabled, but rather whether the Commissioner's finding that she was not disabled between December 17, 2014—the alleged onset date—and January 17, 2021, is supported by substantial evidence and was reached upon a correct application of the law.

## III.    DISCUSSION

Mindful of the threshold for substantial evidence—"only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" a review of the record demonstrates that substantial evidence supports the Commissioner's determinations and remand is not required. *Biestek*, 587 U.S. at 103.

A.    __The ALJ Did Not Err at Step Three.__

Twila H. claims that the ALJ erred at step three because she "substituted her opinion" and found Twila H. not disabled.  Her argument is not persuasive.

"At step three, an ALJ is charged with determining whether a claimant's impairment or combination or impairments meetings, or medically equals, the criteria of an impairment listed in . . .  20 C.F.R. § 416.920(d)."  *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 502 (3d Cir. 2009).  It is not enough to simply allege that the ALJ erred at step three.  Twila H. must "identify specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not."  *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016).  She must also "offer [an] explanation of how further analysis could have affected the outcome of [her] disability claim."  *Id.*

This did not happen here.  Instead, Twila H. "complains in vague terms" that the ALJ erred at step three.  *Id.*  Her brief and reply lack any explanation of why a listing might be satisfied in her case.  (*See, generally*, ECF 15, ECF 21.)  There is no discussion, let alone analysis, of the listings considered by the ALJ or their requirements.  *Id.*; (ECF 15 at 3, ECF 21 at 3.)  It is apparent that the ALJ's decision rested on the absence of any "findings [from a treating or examining physician] that would satisfy the severity requirements of any listed impairment," and Twila H. offers nothing to rebut this determination.  (Tr. 24.)  Indeed, the only record evidence Twila H. cites is an October 2019 medical opinion that states—without explanation—that she was disabled, which for reasons explained below, is unavailing.  (ECF 21 at 3.)

On appeal, Twila H. bears the burden to demonstrate harm, and she must explain how the error to which she points "'could have made any difference.'" *Holloman*, 639 F. App'x at 814 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Here, as in *Holloman*, Twila H. simply argues that harm was done because a positive finding at step three would have eliminated the need to proceed through steps four and five. *Id.* (*See* ECF 15 at 3, ECF 21 at 3.) She does not explain how or why the harm required to warrant a remand resulted from the ALJ's alleged failure at step three. *See Holloman*, 639 F. App'x at 814; *see also Rutherford*, 399 F.3d at 553 ("Rutherford has not specified how that factor would affect the five-step analysis undertaken by the ALJ . . . [t]hat generalized response is not enough to require a remand . . . ."). Remand for further consideration is not required based on this argument.

**B.    Substantial Evidence Supports the ALJ's Evaluation of Ms. Southard's Medical Opinion.**

Twila H. contends that the ALJ improperly "substituted her opinion, over medical evidence provided by [the] claimant" when determining Twila H.'s RFC for the period before January 18, 2021. (ECF 15 at 4.) Specifically, Twila H. argues that the ALJ erred by affording "little weight" to the opinion of her primary care nurse practitioner, Susan Southard, CRNP. (Tr. 31; ECF 15 at 5, ECF 21 at 3.) The ALJ's approach to Southard's opinion did not constitute reversible error.

For SSI applications filed before March 27, 2017, medical opinions are assessed according to 20 C.F.R. § 416.927, which dictates that an ALJ must give them the weight she deems appropriate based on factors such as whether the physician examined or

treated the claimant, whether medical signs and laboratory findings support the opinion, and whether the opinion is consistent with the record as a whole.  20 C.F.R. § 416.927(c).[14] "The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted).

Under the applicable regulation, the ALJ was required to give "controlling weight" to any treating source's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.")  However, the ALJ is not bound by any one medical opinion and was permitted to discount a treating opinion that conflicts with other objective tests or examination results.  *Johnson*, 529 F.3d at 202-03.

For opinions not entitled to controlling weight, the ALJ considers factors including the nature and extent of the treatment relationship, its length, the frequency of examination, supportability of the opinions, consistency of the opinions with the record as a whole, and any specialization of the physician. *See* 20 C.F.R. § 416.927(c)(2)-(6). Ultimately, the ALJ must adequately explain her reasoning for the weight afforded to the opinion but "is not required to supply a comprehensive explanation for the rejection of

---

[14] The rules governing the evaluation of medical opinion evidence for claims filed after March 17, 2017 are different and not applicable to this case.  *See* 20 C.F.R. § 416.920c (prescribing rules for claims filed after March 17, 2017).

evidence" where "a sentence or short paragraph" would suffice. *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

Twila H. claims that the ALJ erroneously found her not disabled prior to January 18, 2021, despite Southard's evaluation "clearly show[ing] she was disable[d] 10/02/19." (ECF 15 at 5.) On October 2, 2019, Southard completed a Department of Human Services ("DHS") welfare form in which she checked a box denoting that Twila H. was permanently disabled. (Tr. 1064.) In June 2020, Southard completed an assessment form where she opined that Twila H. could lift and carry less than ten pounds, stand and walk less than two hours, and sit less than two hours; needed to change position after five to ten minutes, walk around every five minutes, and lie down continuously throughout the day. (Tr. 1500-01.) Twila H. appears to believe that because a treating provider opined that she was "disabled," the ALJ was required to come to the same conclusion. (*See, e.g.*, ECF 15 at 4-5; ECF 21 at 2-3; *see also* Tr. 58 (non-attorney representative Dutton stating that "the only evidence [ ] submitted right now is from her doctor saying that she [is] permanently disabled" and the ALJ explaining that Twila H.'s "doctor cannot determine that she's fully disabled. That decision is left to the Commissioner . . .").) That is not so. "A statement by a medical source that [a claimant] is 'disabled' or 'unable to work' *does not mean* that [the ALJ] will determine that [the claimant] is disabled." 20 C.F.R. § 416.927(d) (emphasis added). Rather, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler*, 667 F.3d at 361.

Substantial evidence supports the ALJ's decision to afford Southard's opinion minimal weight because it was "not supported by the objective imaging and treatment documented in the record." (Tr. 31.) The ALJ expressly confirmed that she evaluated Southard's opinion and explained that the welfare form where the "permanently disabled" box was checked receives "little weight" because the definition of disability utilized by DHS—the agency for which the form was prepared—differs from the definition that the Social Security Administration uses. (Tr. 31.) The ALJ also noted, as the Court has, that a statement that an individual is "disabled" is a legal conclusion on an issue reserved to the Commissioner. (*Id.*); *See* 20 C.F.R. § 416.904 (explaining that other governmental agencies and nongovernmental entities make disability decisions using their own rules, and those decisions are not binding on the Social Security Administration).

The ALJ also adequately explained her reasons for finding that Southard's assessed limitations for Twila H. were not supported by the objective imaging and treatment in the record. (Tr. 31.) Treatment records during the relevant period reflect some limitations, but not the extreme limitations Southard assessed for Twila H. For example, in 2015, Twila H. complained of lower back pain, yet examinations reflected intact sensation in her lower extremities, a non-antalgic gait, intact heel and toe walking, negative straight leg raising tests, and a normal range of motion. (Tr. 29, 882, 884, 885, 888.) In January 2018, Twila H. had an antalgic gait and weakness in her right leg, but she did not use an assistive device, did not need help getting on and off the exam table or rising from a chair, and her strength elsewhere was normal. (Tr. 951-52.)

MRIs of Twila H.'s cervical and lumbar spine showed only mild right neural foraminal stenosis from a right foraminal protrusion at L4-L5, mild/minimal degenerative changes in the cervical spine, multilevel degenerative changes of the lumbar spine, and mild right foraminal stenosis at C7-T1. (Tr. 1003-04.) Medical providers also observed some weakness in her extremities in June 2018, December 2018, and May 2019, but reported normal sensation in Twila H.'s lower extremities, a non-antalgic gait, an intact heel and toe walk, and an unremarkable range of motion in her cervical spine. (Tr. 29, 978, 981, 1008-09, 1413, 1419, 1514.) Despite complaints of pain, she could perform all activities of daily living on her own with breaks in between movements and her functional status was "independent." (Tr. 977, 1000-01, 1513, 1531, 1534.)

The ALJ further explained that, although Twila H. was prescribed a single point cane in January 2019, physical therapy records from that time indicate that she had no problems with balance or coordination and did not use an assistive device to ambulate. (Tr. 1071, 1515, 1561.) Before one physical therapy session, Twila H. reported pain but mentioned that she "was doing a lot of errands and walking around" before her appointment. (Tr. 1526.) Similarly, in February 2020, Southard observed Twila H. ambulating without difficulty, with a normal gait and without a cane. (Tr. 1505.) Physical therapy records also showed that Twila H. repeatedly left appointments early, despite "education that it could benefit her." (Tr. 1516, 1518, 1528, 1536, 1551.) Indeed, her orthopedist stated that she was "still not a candidate for consideration of surgical intervention" and that "there [was] not much more" he could do for her until she completed "a full course" of physical therapy. (Tr. 1564-65.) Notably, Twila H. told a

medical provider she was "not interested" in physical therapy for right leg pain in December 2021.  (Tr. 1601.)

Contrary to Twila H.'s argument, the ALJ did not "total[ly] disregard" Southard's opinion. (ECF 21 at 3.) The ALJ properly considered the limitations that Southard identified and explained why they were inconsistent with the objective medical evidence. (Tr. 29-31.) There is "such relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's determination, and the Court may not re-weigh it to find otherwise.  *Biestek*, 587 U.S. at 103 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

**C.    The ALJ Did Not Err in Relying on the VE's Testimony.**

Twila H. also maintains that the ALJ failed to comply with Social Security Ruling ("SSR") 00-4P, which provides that "[o]ccupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT]." 2000 WL 1898704 (S.S.A. Dec. 4, 2000), *2.  She contends that the ALJ failed to resolve a conflict between the vocational expert's testimony and the information contained in the DOT.  (ECF 15 at 2, 3.)  Her argument is not well taken.[15]

At step five, an ALJ may solicit and rely upon a VE's testimony.  *Boone v. Barnhart*, 353 F.3d 203, 206-07 (3d Cir. 2003).  Generally, occupational evidence provided by a VE

---

[15] Twila H.'s argument regarding the VE's testimony is nothing more than her grievance regarding the ALJ's failure to adopt Southard's October 2019 opinion reframed as a false "conflict" between the VE's testimony—that she was able to work—and Southard's non-binding opinion that she was disabled.  (*See* ECF 21 at 4.)

should be consistent with the occupational evidence presented in the DOT.  *Zirnsak*, 777 F.3d at 617.  To ensure consistency, ALJs have an "affirmative duty," *Rutherford* 399 F.3d at 556, to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the [DOT]."  SSR 00-4P at *1.  The "ALJ is required to (1) ask, on the record, whether the VE's testimony is consistent with the DOT, (2) elicit a reasonable explanation where an inconsistency does appear, and (3) explain in its decision how the conflict was resolved."  *Zirnsak*, 399 F.3d at 617 (quoting *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002) (internal quotation marks omitted)).  "[R]emand may be appropriate if the ALJ fails to inquire regarding an 'explicit' conflict between the VE's testimony and the DOT."  *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015) (citing *Jones*, 364 F.3d at 506 n.6).

Twila H. does not identify any apparent conflict between the VE's testimony and the DOT in her brief or reply, and nothing in the record suggests such a conflict exists. (*See* ECF 15, ECF 21.)  Neither she nor her representative challenged the VE's testimony during the hearing or questioned the VE regarding inconsistencies.  (*See* Tr. 90-93.)  Still, the ALJ obtained detailed responses from the VE in response to her hypotheticals, and the VE affirmed that he relied on the DOT in forming his opinions.  (Tr. 90); *see Diehl v. Barnhart*, 357 F. Supp. 2d 804 (E.D. Pa. 2005) (finding inquiry into a possible conflict unnecessary considering detailed questioning of the VE by the ALJ and the claimant's attorney along with the VE's expressed knowledge of the DOT). Moreover, the ALJ fulfilled her duty by asking the VE to confirm that, if he gave an opinion that conflicted with the information in the DOT, he would need to advise the court of the conflict and

the basis for his opinion.  (Tr. 79); *see Zirnsak*, 777 F.3d at 617 (holding that where neither the VE nor the claimant's attorney identifies an inconsistency at the hearing, the ALJ need go no further than asking whether the testimony is consistent with the information in the DOT). Because any apparent conflict was not "so obvious that the ALJ should have pursued the question," the ALJ was not required to inquire any further and, thus, did not commit reversible error. *Zirnsak*, 777 F.3d at 619 (quoting *Simpson v. Astrue*, 2011 WL 1883124, *7 (E.D. Pa. May 17, 2011) (quoting *Terry v. Astrue*, 580 F.3d 471, 476 (7th Cir. 2009))).

Twila H. also argues that VE "testimony was not needed because [the VE] is not a medical expert and cannot override the doctor['s] evaluation" and that instead, the court "should have ordered social security to seek a medical evaluation." (ECF 15 at 5.)  This argument is unpersuasive, too.

An ALJ has discretion, and not a duty, to order a consultative examination or medical expert testimony. *Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002); *see* 20 C.F.R. § 416.919a (explaining that an ALJ "may purchase a consultative examination to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient"); *see also Hardee v. Comm'r of Soc. Sec.*, 188 F. App'x 127, 129 (3d Cir. 2006) (noting that an ALJ has "broad discretion" in determining whether to consult a medical expert); 20 C.F.R. § 416.929(b) (explaining that an ALJ "*may* ask for and consider the opinion of a medical . . . expert concerning whether [a claimant's] impairments could reasonably be expected to produce [the] alleged symptoms). Similarly, an ALJ has discretion to use a VE to testify about the claimant's ability to work and the availability

of suitable jobs in the national economy.  *See* 20 C.F.R. § 416.966(e) ("[The Social Security Administration] will decide whether to use a vocational expert or other specialist.")

At the first hearing on January 13, 2022, the ALJ determined that Twila H.'s case had "not been properly worked up," as the documents in the record had not been updated since December 2020.  (Tr. 101-02.)  To bring the record current, the ALJ ordered a consultative medical examination of Twila H. and ordered her non-attorney representative to file all outstanding medical records.  (Tr. 101, 126-28.)  The ALJ then set a supplemental hearing for further questioning of Twila H. and to address VE testimony.  (Tr. 128.) However, at the consultative examination, Twila H. refused to let Patrick Frisella, D.O., examine her, and as a result, Dr. Frisella was unable to assess any limitations or evaluate her ability to do work-related activities.  (Tr. 57, 1614-28.)  Though her representative argued during the hearing that Twila H.'s lack of cooperation with the consultative examination arose from extreme pain, the ALJ did "not draw[ ] any conclusions regarding the reasons for her failure to cooperate with Dr. Frisella's examination" because it "was scheduled *for the claimant's benefit.*"  (Tr. 32, 58 (emphasis added).)  *Cf.* 20 C.F.R. § 416.918 (explaining that the agency can find a claimant not disabled "for failing or refusing to take part in a consultative examination" without "good reason"). Her representative did not request further examinations for Twila H. or testimony from a medical expert, and at the supplemental hearing he represented that the record was complete. (*See* Tr. 48-50.) Moreover, the ALJ afforded Twila H. the opportunity to testify at length regarding her alleged impairments, questioned the VE,

and discussed—in detail—the medical evidence, reports, and testimony in rendering her decision. *See Glenn v. Comm'r of Soc. Sec.*, 67 F. App'x 715, 719 (3d Cir. 2003).

Notably, Twila H. does not explain what evidence, if any, would have been uncovered had the ALJ obtained another consultative examination or medical expert testimony. The ALJ considered years of record evidence and multiple medical opinions—detailed at length in the ALJ's decision at step four of the sequential evaluation— and reasonably exercised her discretion when she chose to not to order testimony from a medical expert or an additional consultative examination. Therefore, the ALJ did not err or abuse her discretion in failing to order a second consultative examination or testimony of a medical expert or by using a VE. *Thompson*, 45 F. App'x at 149; *Hardee*, 188 F. App'x at 129; 20 C.F.R. § 416.966(e).

### D.    There is No Evidence the ALJ Was Biased Against Twila H.

Finally, Twila H. contends that the ALJ "demonstrate[d] a conflict towards [her] during the appeal process." (ECF 15 at 2.) She claims that the ALJ "has been against the claimant since the case was assigned," and that, rather than being neutral, the ALJ "was representing social security." (ECF 15 at 5; ECF 21 at 5.) However, nothing in the record demonstrates any bias that would require remand.

An unbiased factfinder is essential to the full and fair hearing required by due process and the Social Security Act. *See Ventura v. Shalala*, 55 F.3d 900, 903 (3d Cir. 1995) (finding that ALJ exhibited bias because "[t]he ALJ's questioning of the claimant was coercive and intimidating, and totally irrelevant to whether claimant was disabled."). Because ALJs play an active role in social security cases, the right to an unbiased judge is

particularly important. *Id.* at 902. The regulations provide that "[a]n [ALJ] shall not conduct a hearing if he or she is prejudiced or partial with respect to any party . . . ." 20 C.F.R. § 416.1440.  If a claimant objects to the ALJ conducting the hearing, they must raise the objection with the ALJ at the "earliest opportunity" and request recusal.  *Id.* Then, if the ALJ does not withdraw, the claimant "may present [their] objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another [ALJ]." *Id.*; *see Hummel v. Heckler*, 736 F.2d 91, 94 (3d Cir. 1984) ("The . . . regulation apparently contemplates that factfinding with respect to claims of bias take place at the agency level, and that judicial review of bias claims take place in review proceedings under section 405(g).").

Twila H. first became aware of a potential bias claim during her supplemental hearing when her non-attorney representative suggested the ALJ was "hostile" towards her.[16]  (*See* Tr. 59.)  However, neither she nor her representative subsequently objected to

---

[16] During the supplemental hearing on September 8, 2022, the ALJ and Twila. H's non-attorney representative had the following exchange:

| ALJ: | Really? You think you put your case on? |
|---|---|
| REP: | I'm through. |
| ALJ: | You think you put your case on? |
| REP: | I'm done because – yes. We're not on the same page, me and you. I don't know why but you're very hostile towards my client. |
| ALJ: | I am not hostile towards your client. |
| REP: | So I'm – |
| ALJ: | I haven't even talked to your client, how could I be hostile to her. You're the one causing the problem here. |

(Tr. 59 (Supplemental Hearing Transcript, Sept. 8, 2022).)

ALJ Warren presiding over the supplemental hearing or Twila H.'s case, generally. Indeed, in Twila H.'s request for review of the ALJ's hearing decision, she raised no objection alleging the ALJ was biased. (*See* Tr. 602-04.) Similarly, in her brief and reply, Twila H. does not allege any facts specific to her case to support finding that ALJ Warren was predisposed against her. She cites no evidence—in the record or otherwise—demonstrating that the ALJ was biased. (*See, generally*, ECF 15, ECF 21); *see Valenti v. Comm'r of Soc. Sec.*, 373 F. App'x 255, 258 (3d Cir. 2010) (finding that ALJ did not exhibit bias where the claimant "has not identified any evidence from the record in [her] case indicating bias or misconduct on the part of the ALJ."). Moreover, the Court reviewed the entire hearing transcript and finds no fault in the ALJ's conduct. *See Fraser v. Astrue*, 373 F. App'x 222, 225 (3d Cir. 2010) (rejecting argument that ALJ was biased because "[e]ven assuming, however, that the ALJ was rather brusque, there is no indication that there was any conflict of interest or inability to render a fair judgment") (citing *Liteky v. United States*, 510 U.S. 540, 551 (1994))). Twila H. has not shown that she did not receive a full and fair hearing. *Ventura*, 55 F.3d at 904.

## IV.    CONCLUSION

Upon review, the ALJ's decision and the underlying record show that her evaluation of Twila H. is supported by "such relevant evidence as a reasonable mind might accept as adequate to support" her determination. *Biestek*, 587 U.S. at 103. Mindful of the Supreme Court's directive that the threshold for "evidentiary sufficiency is not high," remand for further consideration is not required. *Id.*

An appropriate Order follows.